## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| **STEVEN BROWN,** | : | |
| **BENJAMIN WEEKLEY,** | : | |
| **SECOND AMENDMENT FOUNDATION, and** | : | |
| **WEST VIRGINIA CITIZENS DEFENSE** | : | |
| **LEAGUE,** | : | Civil Action |
| | : | No. 1:22-cv-00080 |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES,** | : | |
| **STEVEN DETTELBACH**, in his official capacity | : | |
| as Director of the Bureau of Alcohol, Tobacco, | : | |
| Firearms and Explosives; and | : | |
| **MERRICK GARLAND**, in his official capacity as | : | |
| Attorney General of the United States, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

**COME NOW** the Plaintiffs Steven Brown, Benjamin Weekly, Second Amendment Foundation, and West Virginia Citizens Defense League, by and through counsel, and complain of Defendants as follows:

### INTRODUCTION

1. The Second Amendment protects "the right of the people to keep and bear Arms." And the Constitution ensures that "the right of law-

1

abiding, responsible citizens to use arms in defense of hearth and home" is "elevate[d] above all [governmental] interests" in restricting the right. *District of Columbia v. Heller,* 554 U.S 570, 635 (2008).

2. Plaintiffs include law-abiding, responsible adult citizens who wish to purchase handguns—"the quintessential self-defense weapon," and "the most popular weapon chosen by Americans for self-defense," *Heller*, 554 U.S. at 629—and handgun ammunition from Federal Firearms Licensees ("FFLs") and lawful ammunition sellers for lawful purposes, including "defense of hearth and home."

3. But Defendants' laws, including 18 U.S.C. § 922(b)(l)[1] and (c)(1); 27 C.F.R. §§ 478.99(b)(l), 478.124(a), and 478.96(b); the related regulations, policies, practices, customs designed to implement the same, and Defendants' continuing enforcement of them (collectively, the "Handgun Ban"), prevent law-abiding, responsible adult citizens under age twenty-one—including Plaintiffs Brown, Weekley, and the similarly situated members of the Second Amendment Foundation, and West Virginia Citizens Defense League—from doing so, in

---

[1] "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." 18 U.S.C. § 922(b)(1).

violation of the Second Amendment to the United States Constitution.[2]

4.      "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126. Moreover, "*the government must demonstrate* that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (Internal citations omitted. Emphasis added.).

5.      "[T]he lack of a distinctly similar historical regulation…is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2131 (2022). Indeed, the relevant historical evidence will show that no such similar regulation existed.

6.      The Government's Handgun Ban, and Defendants' actual and threatened enforcement of the same, should and must—under the text of the Constitution itself, as well as our Nation's history and tradition, and the Supreme Court's precedents—be declared unconstitutional and enjoined.

## **PARTIES**

---

[2] Plaintiffs Brown and Weekley are collectively referred to as "Individual Plaintiffs," and Plaintiffs Second Amendment Foundation and West Virginia Citizens Defense League are collectively referred to as "Institutional Plaintiffs."

7.    Plaintiff Steven Brown ("Brown") is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Morgantown, West Virginia and the United States, and is a member of Plaintiffs SAF and WVCDL.

8.    Plaintiff Benjamin Weekley ("Weekley") is a natural person over the age of eighteen and under the age of twenty-one. He is a citizen of Parkersburg, West Virginia and the United States, and is a member of Plaintiffs SAF and WVCDL.

9.    Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms and the consequences of gun control. SAF has members and supporters both over and under the age of twenty-one. SAF has members and supporters throughout the United States, some of whom reside in Morgantown and Parkersburg, West Virginia, and other portions of West Virginia. SAF brings this action on behalf its individual members who would purchase handguns and handgun ammunition from lawful retailers, who would sell handguns and handgun ammunition to adults under the age of twenty-

4

one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

10. Plaintiff West Virginia Citizens Defense League ("WVCDL") is nonpartisan, nonprofit membership organization formed in 2008 with a purpose of preserving, expanding, and perpetuating the right to keep and bear arms in the State of West Virginia. WVCDL has members in all fifty-five counties of the State of West Virginia including members between the ages of eighteen to twenty years old. WVCDL brings this action on behalf of its members who would purchase handguns and handgun ammunition from lawful retailers, and its member FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

11. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is an agency of the United States under its Department of Justice ("DOJ"). ATF is responsible for the investigation and prevention of federal offenses involving the illegal use, manufacture, and possession of firearms, including violations and alleged violations of the Handgun Ban. ATF is also responsible for, *inter alia*, regulating and licensing

the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce. It is authorized to implement regulations for purposes of enforcing the Handgun Ban.[3]

12.    Defendant Steven Dettelbach is the Director of ATF ("Director"). As Director of ATF, Defendant Dettelbach is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the United States, particularly those related to firearms. He is presently enforcing, and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. He is sued in his official capacity.

13.    Defendant Merrick Garland is the Attorney General of the United States ("Attorney General") and is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. Defendant Garland is the head of the DOJ. In that capacity, he is presently enforcing, and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the DOJ, including the ATF, which is an arm of the DOJ. He is sued in his official capacity.

---

[3] *See* 18 U.S.C. § 926.

## JURISDICTION AND VENUE

14.   This action seeks relief pursuant to 28 U.S.C §§ 2201, 2202, and 2412.
      Jurisdiction is founded on 28 U.S.C. § 1331, in that this action arises
      under the Constitution and laws of the United States.

15.   The Defendants, including ATF, are amenable to suit for relief other
      than money damages pursuant to 5 U.S.C. § 702.

16.   The Court has authority to award costs and attorney fees under 28
      U.S.C. § 2412.

17.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and
      (e).

## STATEMENT OF FACTS

18.   Plaintiff Brown has never been charged with nor convicted of any
      misdemeanor or felony offense, and is otherwise eligible to purchase
      and possess firearms, including handguns, under all applicable laws.
      Plaintiff Brown does not own a handgun but intends and desires to
      purchase a handgun and handgun ammunition for lawful purposes,
      including self-defense.

19.   Specifically, Plaintiff Brown desires to purchase a Bersa Thunder 380
      handgun and accompanying ammunition for self-defense and other
      lawful purposes, including proficiency training and target shooting, in
      the exercise of his fundamental right to keep and bear arms under the
      Second Amendment. But as a result of Defendants' active enforcement

7

of the Handgun Ban, Plaintiff Brown is prevented from doing so.

20.   On or about June 16, 2022, Plaintiff Brown visited Rural King, an FFL in Parkersburg, West Virginia, and sought to purchase a Bersa Thunder 380 and a shotgun. After viewing the firearms he wished to purchase, including the Bersa Thunder 380, the clerk asked Plaintiff Brown for his driver's license. Upon reviewing his driver's license, the clerk informed Plaintiff Brown that he would be unable to sell him the handgun as he was under the age of twenty-one and prohibited by law from doing so but would be able to sell him the shotgun. Plaintiff Brown proceeded to complete the required paperwork, pass the background check, and purchase the shotgun.

21.   On or about July 15, 2022, Plaintiff Brown sought to purchase 50 rounds of 9mm Luger from Burns Bait and Carryout, an FFL located in Elizabeth, West Virginia and was denied on the basis of his age because he was under twenty-one.

22.   Plaintiff Brown is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible to acquire and possess handguns for such purposes under all applicable state and federal laws.

23.   The Handgun Ban prevents Plaintiff Brown from purchasing a handgun of his choice, the Bersa Thunder 380, from a lawful retailer in violation of his constitutionally enumerated rights.

8

24.   But for the Handgun Ban, Plaintiff Brown would purchase a Bersa Thunder 380 and handgun ammunition from a lawful retailer to exercise his right to keep and bear arms for self-defense and other lawful purposes.

25.   Plaintiff Weekley has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Weekley does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

26.   On or about June 12, 2022, Plaintiff Weekley visited Rural King, an FFL in Parkersburg, West Virginia, and sought to purchase a handgun. After viewing the firearm he wished to purchase the clerk asked Plaintiff Weekley if he was a West Virginia resident. After confirmation of his residency, the clerk inquired as to Plaintiff Weekley's age. Upon learning that Plaintiff Weekley was under the age of twenty-one, the clerk informed Plaintiff Weekley that he would be unable to sell him the handgun as doing so was prohibited by law. The clerk further informed Plaintiff Weekley that he could purchase a long gun.

27.   Plaintiff Weekley desires to purchase a Glock 42 and accompanying handgun ammunition for self-defense and other lawful purposes,

including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Weekley is prevented from doing so.

28. The Handgun Ban prevents Plaintiff Weekley from purchasing handgun of his choice, the Glock 42, from lawful retailers, in violation of his constitutionally enumerated rights.

29. Plaintiff Weekley is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible acquire and possess handguns for such purposes under all applicable state and federal laws.

30. But for the Handgun Ban, Plaintiff Weekley would purchase a Glock 42 and accompanying handgun ammunition from a lawful retailer to exercise his right to keep and bear arms for self-defense and other lawful purposes.

31. Eighteen is the age of majority in 47 states, including West Virginia.

32. All law-abiding U.S. citizens who are legal adults, including eighteen to twenty year-olds, have the right to: (i) vote; (ii) fully exercise the freedoms of speech, assembly, and petitioning of the government under the First Amendment to the United States Constitution; (iii) the full panoply of liberty protections in the Fourth, Fifth, and Sixth Amendments; (iv) enter into contracts; and (v) serve in the United

States Military as well as the militias and guards of the several states. They are also held responsible as adults for crimes they commit, and even being held fully accountable before the law for criminal matters to the point of being punished by execution.

33. Indeed, all male citizens over eighteen years of age are designated members of the militia pursuant to 10 U.S.C. § 246(a) and may be selected and inducted for training and service into the United States armed forces under 50 U.S.C. § 3803(a). *See Heller*, 554 U.S. at 624 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense.") (quoting *United States v. Miller*, 307 U.S. 174, 170 (1939)).

## **THE HANDGUN BAN**

**34.** 18 U.S.C. § 922(b)(1) declares: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." All violators "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. §924(a)(1)(D).

11

35.    As reflected in Defendant ATF's Minimum Age for Gun Sales and

Transfers publication:[4]

> Handguns: Under federal law, FFLs may not sell, deliver, or otherwise transfer any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is under the age of 21.

36.    As further reflected on Defendant ATF's Q&A portion of its website:[5]

> **May an individual between the ages of 18 and 21 years of age acquire a handgun from an unlicensed individual who is also a resident of that same State?**
>
> An individual between 18 and 21 years of age may acquire a handgun from an unlicensed individual who resides in the same State, provided the person acquiring the handgun is not otherwise prohibited from receiving or possessing firearms under Federal law. A Federal firearms licensee may not, however, sell or deliver a firearm other than a shotgun or rifle to a person the licensee knows or has reasonable cause to believe is under 21 years of age.
>
> There may be State or local laws or regulations that govern this type of transaction. Contact the office of your State Attorney General for information on any such requirements.

37.    18 U.S.C. § 922(c) provides that "a licensed importer, licensed

manufacturer, or licensed dealer may sell a firearm to a person who

does not appear in person at the licensee's business premises . . . only

if" the person signs a sworn statement attesting "that, in the case of

any firearm other than a shotgun or a rifle, I am twenty-one years or

---

[4] Available online at: https://www.atf.gov/resource-center/docs/guns-min-agepdf/download.

[5] Available online at https://www.atf.gov/questions-and-answers/qa/may-individual-between-ages-18-and-21-years-age-acquire-handgun-unlicensed.

more of age."

38.   27 C.F.R. § 478.99(b)(l) similarly declares: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

39.   Under 18 U.S.C. § 922(a)(5), it is illegal "for any person [other than a licensed dealer] to transfer, sell, trade, give, transport, or deliver any firearm to any person . . . who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides."

40.   Thus, the Handgun Ban categorically prohibits any adult over the age of eighteen but under the age of twenty-one from purchasing a handgun and handgun ammunition from licensed retailers.

## THE HANDGUN BAN IS UNCONSTITUTIONAL

41.   The Second Amendment guarantees the individual right "to keep and bear arms." *See also Heller*, 554 U.S. at 595 and *Bruen*, 142 S.Ct. at 2122.

42.   This is especially true when it comes to handguns, which the Supreme Court has explicitly recognized as "the quintessential self-defense

weapon." *Heller*, 554 U.S. at 629.

43. The fundamental right to keep and bear arms protected by the Second Amendment secures the right to purchase handguns and handgun ammunition for self-defense and other lawful purposes. These protections extend in full to all law-abiding, peaceable adults aged eighteen and older.

44. The Handgun Ban impermissibly infringes upon the right to keep and bear arms of all law-abiding, peaceable individuals aged eighteen to twenty.

45. *Heller* demonstrated—through its analysis of the Second Amendment's text, supported and informed by our Nation's history and tradition—that historically ungrounded restrictions on the possession of handguns for self-defense must be held categorically unconstitutional, rather than subject to interest balancing.

46. The analysis must be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). We look to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

14

47.    *Bruen* confirms that the lower courts approach of analyzing Second Amendment challenges which combined history with means-end scrutiny was "one step too many." *Bruen*, 142 S.Ct. at 2127.

48.    American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were understood to have full Second Amendment rights in the founding era.

49.    Indeed, over 250 colonial and founding-era militia statutes throughout the seventeenth and eighteenth centuries mandated that persons aged eighteen to twenty acquire and keep arms in order to serve in the militia and otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495 (2019) (providing over 200 militia statutes).

50.    Many statutes unrelated to militia service also required adults under the age of twenty-one to keep and carry arms. *Id.*

51.    In contrast, no colonial or founding era law restricted the right of individuals between the age of 18 and 21 to acquire or possess arms.

52.    Only months after the Second Amendment was ratified, Congress took steps to "provide for organizing, arming, and disciplining, the Militia" (U.S. Const. art. I, § 8, cl. 16), by enacting the Militia Act of 1792, requiring that every male citizen of each respective state, "who is or shall be of the age of eighteen years, and under the age of forty-five

15

years … shall severally and respectively be enrolled in the militia[.]"

53.     In 1790, Secretary of War Henry Knox submitted a militia plan to
        Congress stating that "all men of the legal military age should be
        armed," and that "[t]he period of life in which military service shall be
        required of [citizens] [was] to commence at eighteen." 1 Annals of
        Cong., app. 2141, 2145-2146.[6]

54.     Representative Jackson agreed "that from *eighteen to twenty-one* was
        found to be the best age to make soldiers of." Annals of Cong., app.
        2141, 2145-2146. (emphasis added). Eighteen was the age that George
        Washington recommended for militia enrollment. 26 The Writings of
        George Washington 389 (John C. Fitzpartick ed., 1938).

55.     The colonial and founding-era laws and customs provide irrefutable
        evidence that eighteen to twenty year-olds had the same Second
        Amendment rights as older individuals at the time the Second
        Amendment was ratified.

56.     *Heller* may not have "clarif[ied] the entire field" of Second Amendment
        analysis, 554 U.S. at 634, but it surely foreclosed any argument that
        the Second Amendment does not protect individuals who, at the time
        of ratification, were not only authorized but *required* by both state and
        federal law to keep and bear arms, *see id.* at 625 (concluding with "our
        adoption of the original understanding of the Second Amendment").

---

[6] The Annals of Congress may be viewed online at https://memory.loc.gov/cgi-bin/ampage.

57.    And *Bruen* squarely closes the door on any argument to the contrary. *See Bruen*, 142 S.Ct. at 2127, ("[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

58.    While the right protected by the Second Amendment is by no means, and could not be, limited to militia service, "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that the right … was codified in the written Constitution." *Heller*, 554 U.S. at 559.

59.    Thus, there is and never has been any constitutionally grounded basis for restricting the rights of law-abiding citizens over eighteen yet under twenty-one years of age who are eligible to serve in the military and to die for their country.

60.    It is clear that the text of the Constitution itself, as informed by our Nation's history and tradition and the Supreme Court's precedents, protects the right of adults eighteen years of age, but under age twenty-one—like Individual Plaintiffs Brown and Weekley, and Institutional Plaintiffs SAF and WVCDL's members—to acquire, keep, and bear handguns for lawful purposes, including but not limited to self-defense, sport, and hunting, just like law-abiding, peaceable adults who are aged twenty-one and older.

61.    The handgun is a ubiquitous armament in American society and is

owned by millions of law-abiding, peaceable citizens for lawful purposes. Handguns are neither "unusual" nor "dangerous" as those terms are used in *Heller*.

62. The Second Amendment right fully extends to handguns, such as those that Plaintiffs and other similarly situated adults would lawfully, *inter alia*, purchase, possess, keep, bear, and practice proficiency with but for the Handgun Ban and Defendants' enforcement of it.

63. To be sure, to justify a regulation as "consistent with the Second Amendment's text and historical understanding," it is the government's burden to demonstrate by "analogical reasoning" the existence of "a proper analogue." *Bruen*, 142 S.Ct. 2131-32.

64. Put another way, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify the regulation, the government…must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. "[T]he government may not simply posit that the regulation promotes an important interest." *Id*.

65. The Handgun Ban is flatly unconstitutional under the Second Amendment, *Heller*, and *Bruen*.

### COUNT I – THE HANDGUN BAN IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED TO ALL PLAINTIFFS UNDER THE SECOND AMENDMENT
### (U.S CONST., AMEND. II)
### (All Plaintiffs v. Defendants)

71.   The foregoing paragraphs are re-incorporated herein as if set forth in full.

72.   18 U.S.C. §§ 922(b)(l) and 922(c)(1), 27 C.F.R. §§ 478.99(b)(l), 478.124(a), 478.96(b), and the related regulations, policies, practices, and customs designed to implement the same, and the Defendants' enforcement of them, prohibit FFLs from selling handguns and handgun ammunition to the large class of law-abiding, peaceable, and otherwise-eligible adults aged eighteen to twenty-one.

73.   As a direct consequence of the Handgun Ban, individuals in this class are unable to exercise their right to purchase handguns from FFLs, and handgun ammunition from lawful retailers, for self-defense and all lawful purposes protected under the Second Amendment.

74.   Consequently, the Handgun Ban unconstitutionally infringes and imposes an impermissible burden upon the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

75.   Absent a declaration that the Handgun Ban unconstitutionally precludes Individual Plaintiffs and similarly situated members of Institutional Plaintiffs from exercising their enumerated rights,

19

Defendants will continue to enforce the Handgun Ban, contrary to both public policy and the Constitution of the United States, causing irreparable damage to Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

76. Plaintiffs seek a declaration that the Handgun Ban violates the rights of Individual Plaintiffs Brown and Weekley and similarly situated members of Institutional Plaintiffs SAF and WVCDL and is unconstitutional facially and as applied to them.

77. Individual Plaintiffs and similarly situated members of Institutional Plaintiffs are presently and continuously injured by Defendants' enforcement of 18 U.S.C. §§ 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban, insofar as they violate the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs, by prohibiting licensed dealers from conducting sales of handguns to adults aged eighteen to twenty.

78. If not enjoined by this Court, Defendants will continue to enforce 18 U.S.C. §§ 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban in violation of Individual Plaintiffs' constitutional rights and of all those similarly situated members of Institutional Plaintiffs. Plaintiffs and the class of individuals and entities on whose behalf they bring this case have no

plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs, and the class of individuals and entities on whose behalf they bring this case, because they are unable to engage in constitutionally protected activity due to the Handgun Ban.

79. For the foregoing reasons, Plaintiffs request declaratory and injunctive relief as hereinafter prayed for.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants as follows:

A. Declare that 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun Ban, as well as Defendants' enforcement of same, violate the right to keep and bear arms secured by the Second Amendment to the United States Constitution both facially and as-applied;

B. Permanently enjoin the Defendants, their officers, agents, servants, employees, all persons in active concert or participation with them, and all who have notice of the injunction, from enforcing 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative regulations, and all related laws, policies, enforcement practices, and customs underlying the Handgun

Ban, against Individual Plaintiffs and all similarly situated Institutional Plaintiffs' members;

C.      Award costs and attorney fees and expenses to the maximum extent permitted under 28 U.S.C. § 2412 and any/all other applicable laws; and,

D.      Grant such other and further relief as the Court deems just and proper.


Respectfully submitted, this 27th day of September, 2022.

                                        /s/ John H. Bryan
                                         John H. Bryan
                                        (WV Bar No. 10259)
                                        JOHN H. BRYAN,
                                        ATTORNEY AT LAW
                                        411 Main Street
                                        P.O. Box 366
                                        Union, WV 24983
                                        (304) 772-4999
                                        Fax: (304) 772-4998
                                        jhb@johnbryanlaw.com


                                        /s/ Adam Kraut
                                        Adam Kraut
                                        KRAUT AND KRAUT
                                        P.O. Box 101
                                        Westtown, PA 19395
                                        Phone: (610) 696-8200
                                        Email: adam@krautlaw.com
                                        Application *Pro Hac Vice*
                                        Pending

                                        *Attorneys for Plaintiffs*