# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **STEVEN BROWN,** *et al.*, | : |
| | : |
| Plaintiffs, | : Case No.: |
| | : 1:22-cv-00080-TSK |
| v. | : |
| | : |
| **THE BUREAU OF ALCOHOL, TOBACCO,** | : |
| **FIREARMS AND EXPLOSIVES,** *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

John H. Bryan
(WV Bar No. 10259)
JOHN H. BRYAN,
ATTORNEY AT LAW
411 Main Street P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

Adam Kraut
KRAUT AND KRAUT
P.O. Box 101
Westtown, PA 19395
(610) 696-8200
Adam@Krautlaw.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I. Individual Plaintiffs Demonstrate that They Cannot Legally Acquire a Handgun From a Licensed Dealer ................................................................................................................1

II. The Specific Restrictions of Firearm Ownership Recognized in Heller ...........................3

III. Founding-Era Militia Statutes ............................................................................................4

IV. Fundamental Rights and "Reasonable" Age Restrictions..................................................7

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................passim

*Hirschfeld v. ATF*, 5 F.4th 407 (4th Cir. 2021) ..................................................4, 5, 6, 8

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,* 14 F.4th 322 (4th Cir. 2021) ..............................................................................................................4

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) .......................................................4, 5, 6

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ................................................................8

*Nat'l Rifle Ass'n of Am. v. ATF*, 714 F.3d 334 (5th Cir. 2013) ................................4, 5

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ........................................................................2, 5, 6

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) ...................................................................8

*New York State Rifle & Pistol Assn'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).......3, 6, 9

*Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976) ..................9

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ...........................8

*United States Term Limits v. Thornton*, 514 U.S. 779 (1995) .....................................7

**Statutes**

W. Va. Code § 61-7-8.....................................................................................................2

W. Va. Code § 61-7-1.....................................................................................................2

W. Va. Code § 61-7-10...................................................................................................2

**Regulations**

27 C.F.R. § 478.1 ...........................................................................................................1

## I. Individual Plaintiffs Demonstrate that They Cannot Legally Acquire a Handgun From a Licensed Dealer

Defendants attempt to lead this Court down a path which is irrelevant and ultimately results with the Individual Plaintiffs being unable to exercise their Second Amendment Rights. To be sure, Plaintiffs have *never* asserted that current law and/or regulations bar the *possession* of handguns for the Individual Plaintiffs, but rather that those laws and/or regulations bar the ability of Individual Plaintiffs to *purchase* a handgun from a licensed dealer. In other words, Plaintiffs are seeking the ability to exercise their Second Amendment right without having to obtain permission *and assistance* from a parent or guardian – which is no exercise of a right at all.

While Defendants declare that "the current regulations are intended to stop the *clandestine* acquisition of handguns by 18- to 20-years-olds, outside the oversight of their parents or legal guardians," the practical effect is quite the opposite. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and Reply in Support of Defendants' Motion to Dismiss, ECF Doc. 33 (Defs.' Response) at 3. Rather than permitting 18-to-20-year-olds, like Individual Plaintiffs, to purchase handguns directly from Federal Firearms Licensees ("FFLs"), who are highly regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")[1], Defendants' laws permit the acquisition of

---

[1] *See* 27 C.F.R. § 478.1, *et seq.* for regulations pertaining to FFLs.

1

handguns through other means, including a face-to-face transfer requiring no background check or involvement of an FFL.[2]

Moreover, the Government's argument that Individual Plaintiffs, who are *legal adults*, can still acquire handguns from FFLs through their parents or guardians[3] cannot be squared with the fact that the Second Amendment enshrines a personal right, which the Plaintiffs hold. The Fifth Circuit rejected the same argument from the Government in *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives* ("*NRA I*"), 700 F.3d 185, 191-92 (5th Cir. 2012), finding that "by prohibiting FFLs from selling handguns to 18-20-year-olds, the laws cause those persons a concrete, particularized injury."[4] Plaintiffs know of no other right that requires parental involvement to be exercised by an adult. Nor is it sufficient to say that because Individual Plaintiffs could procure a handgun from a source other than an FFL that Defendants' laws and enforcement thereof is somehow permissible. *See District of Columbia v. Heller*, 554 U.S. 570, 629 (2008) ("It is no answer to say, as petitioners do, that it is permissible to ban the

---

[2] *See* W. Va. Code § 61-7-1, *et seq.* (Having no law requiring a private party transfer to commence through an FFL, nor any law preventing the sale of a handgun to an individual over the age of 18 in a private sale). *See also* W. Va. Code § 61-7-10 (defining penalties for sales to prohibited persons, to include those under Article 7 and 18 U.S.C. § 922) and W. Va. Code § 61-7-8 (defining prohibitions on persons under 18-years-old from possessing deadly weapons generally).

[3] This argument also relies on a premise that, among other things, the parents or guardians of the Individual Plaintiffs, or those similarly situated, are not prohibited persons and are able to lawfully purchase a firearm.

[4] The Fifth Circuit did ultimately rule in favor of the Government, but it did so under the now abrogated two-step test that the Circuits employed.

2

possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed.").

## II. The Specific Restrictions of Firearm Ownership Recognized in *Heller*

Plaintiffs do not claim that *Heller* or its progeny have created a "new right that reached all citizens at all times." Def. Response at 4. While *Heller* did recognize that "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," *Heller*, 554 U.S. at 626-27, are likely constitutionally permissible, that does not necessarily equate to a ban on the acquisition of arms from an FFL by those who are ages 18-to-20-years-old. *Heller* was rather explicit when it stated, "the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 581. Thus, the presumption is that the right to keep and bear arms belongs to *all* Americans, regardless of age. Even if the Handgun Ban were presumptively constitutional, as the Government contends the bans on felons and mentally ill are, presumptions are rebuttable.

As the Court declared in *Bruen*, if a law restricts conduct falling within the scope of the Second Amendment's text, that law is presumed invalid and can only be saved if the Defendants demonstrate the existence of "a distinctly similar historical regulation" that burdened the right to bear arms in the same way and for the same

3

reasons. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131, 2133 (2022). In other words, it is the *Government's burden* to find and explain the historical analogues or twins for which they believe such bans can stand.

Defendants state that "nowhere in the *Heller* opinion does the Supreme Court suggest that minor children now have an unrestricted right to purchase a handgun." Defs.' Response at 4. Yet, Individual Plaintiffs are *not* minor children, nor are Plaintiffs seeking to obtain any form of relief that would allow minor children to have an unrestricted right to purchase a handgun. Plaintiffs are not attempting to create a *new* right, but simply vindicate the right they already have. And in any case, the Second Amendment's text lacks any restrictions on "minors", so even if that were at issue in this matter – and it is not – Defendants would still shoulder the burden of showing laws restricting minors are constitutionally permissible consistent with *Bruen*. And *Bruen* makes clear the burden is on the Government to justify its laws through specific historical analogues, not atmospherics about what they *think* the founding era was like.

### III. Founding-Era Militia Statutes

As stated in their opening brief, Plaintiffs do not rely on founding era militia statutes for the proposition that they somehow extended Second Amendment rights to 18-year-olds. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion for Summary Judgment, ECF Doc. 29

4

(Pls.' Mem.), at 17.[5] Plaintiffs merely use the militia statutes to show that 18-to-20-year-olds are within the militia referenced by the Second Amendment. And of course, the Second Amendment enshrines "an individual right unconnected with militia service." *Heller*, 554 U.S. at 582. Thus, the only logical conclusion one may draw is that those required to serve in the militia are squarely amongst "the people" who possessed the right. *See Hirschfeld*, 5 F.4th at 429-30.

Defendants argue that "the minimum age for militia service fluctuated dramatically, ranging from 21 years old…to 16 years old in some states at some points," suggesting that Congress and state legislatures had the discretion to fix age requirements for the acquisition of arms. Defs.' Response at 5. Further, Defendants claim support for their position inasmuch as "the states and Congress recognized that those under 21 years old were unemancipated minors, subject to special

---

[5] Defendants call into question Plaintiffs' citation of *Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *Hirschfeld v. ATF*, 5 F.4th 407, 421, (4th Cir. 2021), and *Nat'l Rifle Ass'n of Am. v. ATF*, 714 F.3d 334, 342 (5th Cir. 2013) (Jones, J., dissenting) ("*NRA II*"). While it is true *Jones* was vacated and remanded, it was done so "for further proceedings consistent with the United States Supreme Court's decision in [*Bruen*]." *Jones v. Bonta*, 47 F.4th 1124, 1125 (9th Cir. 2022). Notably, nothing as to the accuracy of the historical inquiry performed prior to *Bruen* was or has been called into question. *Hirschfeld* was vacated due to the plaintiff turning 21 and the attempted addition of parties under 21 coming at a time too late to prevent the case from becoming moot. *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,* 14 F.4th 322, 326 (4th Cir. 2021). The *Hirschfeld* Court also noted "that the public and the 'legal community as a whole,' will still retain some benefit from the panel opinion even if vacated, because the exchange of ideas between the panel and dissent will remain available as a persuasive source." *Hirschfeld,* 14 F.4th at 328. Much like *Jones*, and likely to Defendants' chagrin, the historical information contained within *Hirschfeld* remains unimpeached. Lastly, Plaintiffs would invite this Court to compare the dissenting opinion of Judge Jones in *NRA II* with that of the panel opinion in *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*NRA I*"), to decide which more closely hews to the assignment *Bruen* tasked the Courts with performing when deciding Second Amendment challenges. *See Jones*, 34 F.4th at FN 20 ("Much of Judge Jones's historical analysis remains unrefuted.")

regulations and the oversight of parents or legal guardians, even while serving in the militia." *Id*. at 5-6. These arguments fall short.

While it is true that the minimum age for militia service fluctuated, once ratification occurred "every state also set their militia age at 18." *Hirschfeld*, 5 F.4th at 428. *See also Jones*, 34 F.4th at 719, citing *NRA II*, 714 F.3d at 340-44 (Jones, J., dissenting) ("[a]t the time of the Second Amendment's passage, or shortly thereafter, the minimum age for militia service in every state became eighteen."). As stated *supra*, militia laws are helpful in determining the scope of *who* was considered to have Second Amendment rights because the militia is a subset of the people who possessed them. *Heller*, 554 U.S. at 580.

Moreover, Defendants' belief that the under "the contemporary background legal principle that rights under the Second Amendment attach at the age of 21," Defs.' Response at 6, has been considered *and rejected* by the Fourth, Fifth, and Ninth Circuits. *See Hirschfeld*, 5 F.4th at 435-37; *NRA I*, 700 F.3d at 204 n.17; and *Jones*, 34 F.4th at 722.[6] While the Fourth and Fifth Circuit ultimately reached differing conclusions about 18-to-20-year-olds and their Second Amendment rights, they both agreed that "majority or minority is a status that lacks content without reference to the right at issue." *Jones*, 34 F.4th at 722. (internal citations omitted).

---

[6] Given the opportunity to provide a sur-reply, Plaintiffs anticipate that Defendants would be quick to reiterate that *Hirschfeld* and *Jones* were vacated. Plaintiffs acknowledge that those decisions were, as they had done *supra*, but would remind this Court that the historical inquiries in both cases remain compelling and Defendants have simply raised the same tired arguments regarding this particular point.

6

Defendants argue that "Congress and the states expressly recognized that those under 21 years old were generally unemancipated and subject to parental authority," Defs.' Response at 9, however, such is no longer the case. And even if this Court were to consider such an argument, *Bruen* provides to two metrics to be considered when looking for regulations that were "relevantly similar" – those being "how and why the regulations burden [the Second Amendment]." *Bruen*, 142 S. Ct. at 2133. First, 18-to-20-year-olds are no longer unemancipated minors and the comparison should be given no credence. However, to the extent that the militia statutes can be read as regulating the use and/or acquisition of firearms by minors, even if the "why" is still justified under a proper analysis, it is wholly inapplicable to Plaintiffs as they are *not* minors. Thus, Defendants are left unable to defend the constitutionality of their Handgun Ban in a manner that comports with the Supreme Court's directive.

### IV. Fundamental Rights and "Reasonable" Age Restrictions

Defendants propose that the legislature may "draw categorical minimum age limits for certain activity," and then cite several different provisions pertaining to age to serve in office, voting, and the legislatures ability to set different minimum ages for different activities. Defs.' Response at 11-12.

How Defendants believe that citing to various clauses with age restrictions for serving in office supports their position is of interest. As a general matter, the comparison of the ability to serve in office to the exercise of one's constitutional rights, particularly one found in the Bill of Rights, is rather curious. Even if this

7

Court were to accept the proposition that they are somehow the same, all the Defendants have done is show that the framers of the Constitution *knew* how to impose age restrictions on various provisions and *chose not to do so* as it related to the Bill of Rights. *See United States Term Limits v. Thornton*, 514 U.S. 779, 868 (1995) (Thomas, J., dissenting). "When the Framers decided which qualifications to include in the Constitution, they also decided not to include any other qualifications in the Constitution." However, Plaintiffs do not advocate that the ability to serve in office is somehow equivalent to exercising one's enumerated constitutional rights.

Further, the Second Amendment refers to the "right of the people," as does the First and Fourth Amendments, which all "codify a pre-existing, fundamental, inalienable individual right." *Hirschfeld*, 5 F.4th at 421-22. *C.f. Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) and *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). It would be strange to extend some "pre-existing, fundamental, inalienable individual rights" to 18-to-20-year-olds but not others. The *Hirschfeld* Court also identified other rights that applied to all persons, including minors, that further casts doubt on Defendants' position. *Hirschfeld*, 5 F.4th at 422-23 (finding that other *enumerated rights*, such as the right to due process and equal protection of the law applied to all persons, including minors, along with the Eighth Amendment, and that *unenumerated rights* such as the recently abrogated right to abortion also did as well.).

Defendants place a great deal of stock in the right to vote as a basis for restrictions on 18-to-20-year-olds right to keep and bear arms, but this too remains

8

unconvincing. "[T]he right to vote is held by individuals, but they do not exercise it solely for their own sake; rather, they cast votes as part of the collective enterprise of self-governance." *Kanter v. Barr*, 919 F.3d 437, 462 (7th Cir. 2019) (Barrett, J., dissenting). Put another way, it is a civic right. And *Heller* squarely rejected the notion that the Second Amendment was a civic right. *Heller*, 554 U.S. at 595, 582-86. Numerous states had also adopted constitutional provisions which disenfranchised those who were felons from exercising the right to vote, something notably absent from the right to bear arms. *See Kanter*, 919 F.3d at 463-64.

Perhaps most telling is Defendants inability to point to a single constitutional right that does not apply by the age of 18. While it may be true that not all constitutional rights attach before the age of 18, many do, including those which are "pre-existing, fundamental, inalienable individual rights." "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of maturity." *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74 (1976). To treat the Second Amendment as different would continue the trend of treating it as a "second-class right." *Bruen*, 142 S. Ct. at 2156. . (internal citations omitted). And to do so cannot withstand constitutional scrutiny.

9

## CONCLUSION

The Court should grant Plaintiffs' Motion for Summary Judgment.

Dated: February 7, 2023						Respectfully submitted,

/s/ John H. Bryan
John H. Bryan
(WV Bar No. 10259)
JOHN H. BRYAN,
ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

/s/ Adam Kraut
Adam Kraut
KRAUT AND KRAUT
P.O. Box 101
Westtown, PA 19395
(610) 696-8200
Adam@Krautlaw.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*