IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN ROBERT BROWN,
BENJAMIN WEEKLEY,
SECOND AMENDMENT FOUNDATION, and
WEST VIRGINIA CITIZENS DEFENSE
LEAGUE,

      Plaintiffs,

   v.                            CIVIL ACTION NO. 1:22-CV-80
                                         (Chief Judge Kleeh)

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
MERRICK GARLAND, U.S. Attorney General,
in his official capacity, and
STEVEN DETTELBACH, Director
of the ATF, in his official capacity,

      Defendants.

MEMORANDUM OPINION AND ORDER

     Pending before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment. ECF Nos. 23, 28. For the reasons that follow, Defendants' Motion to Dismiss is **DENIED** and Plaintiffs' Motion for Summary Judgment is **GRANTED**.

## I.    <u>FACTUAL BACKGROUND</u>

### A.   Undisputed Facts

     This case requires the Court to assess the protected right of the people under the Second Amendment to the Constitution to keep and bear arms. U.S. Const. amend. II. Plaintiffs Robert Brown ("Brown") and Benjamin Weekley ("Weekley"), individuals, are "law-abiding, responsible adult citizens who wish to purchase

MEMORANDUM OPINION AND ORDER

handguns."  ECF No. 11, First Am. Compl. ¶¶ 2, 7-8; see also ECF No. 28-3, Brown Decl.; ECF No. 28-2, Weekley Decl.  Brown and Weekley are citizens of West Virginia and the United States of America and are between the ages of eighteen and twenty-one.  Am. Compl. ¶¶ 7-8.  Brown and Weekley, as law-abiding, responsible adult citizens, would purchase handguns and handgun ammunition from Federal Firearms Licensees ("FFLs") but for the right proscribed by 18 U.S.C. §§ 922(b)(1) and (c)(1).  Id. ¶¶ 1-3.

Plaintiffs Second Amendment Foundation ("SAF")[1] and West Virginia Citizens Defense League ("WVCDL") are organizational plaintiffs.  Id. ¶¶ 9-10.  WVCDL "is [a] nonpartisan, nonprofit membership organization formed in 2008 with a purpose of preserving, expanding, and perpetuating the right to keep and bear arms in the State of West Virginia."  Id. ¶ 10.  WVCDL includes adult members between the ages of eighteen years and twenty years who, absent the handgun ban, would purchase handguns and the associated ammunition.  Id.  Brown and Weekley are members of both organizational plaintiffs.  Id. ¶¶ 7-8.

Plaintiffs assert claims against Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); Steven

---

[1] In the briefings, the parties agree to the voluntary dismissal, without prejudice, of SAF due to its involvement in Reese v. ATF, No. 6:20-cv-01438 (W.D. La. May 5, 2021).  Therefore, SAF is **DISMISSED WITHOUT PREJUDICE** from this action and is not part of the Court's opinion herein.

MEMORANDUM OPINION AND ORDER

Dettelbach, the Director of ATF; and Merrick Garland, Attorney General of the United States, alleging injuries-in-fact due to the statutory prohibition against 18-to-20-year-olds from purchasing handguns and handgun ammo. Id. ¶¶ 11-13. Brown and Weekley both attempted to purchase handguns from FFLs in and around June and July 2022. Id. ¶¶ 18-30. Each FFL refused the sales because they were under twenty-one years of age. Id.

### B. Defendants' Response

For purposes of Plaintiffs' Rule 56 motion, the Court treats these facts as undisputed. Defendants filed a Response to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment [ECF No. 34] pursuant to this District's Local Rule of Civil Procedure 7.02. However, Defendants' submission does not create any genuine issues of material fact sufficient to preclude consideration of summary judgment. That Response lists eight (8) factual statements from Plaintiffs' motion and, for six (6) of those, simply offers "Statement disputed. Defendants have no knowledge as to the truth of this statement." ECF No. 34. Simply denying any knowledge about factual statements made in a sworn declaration does not carry a non-movant's burden under Rule 56. Another part of the response simply notes Defendants' inability to verify factual assertions. Id.

**Brown v. ATF**                                                    **1:22cv80**

<u>MEMORANDUM OPINION AND ORDER</u>

Although the Court is required to make all inferences in the light most favorable to the non-movant, Defendants' burden in facing a Rule 56 motion is not insignificant.  As Judge Bailey summarized,

> [a]dditionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." [<u>Matusushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)].  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323-25; <u>Anderson</u>, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985).

<u>Anderson v. Profrac Mfg., LLC</u>, No. 5:20-CV-227, 2022 WL 2902846, at *2 (N.D.W. Va. May 25, 2022) (Bailey, J.).  Defendants do not even engage in speculation based on stacked inferences.  They simply "dispute" Plaintiffs' factual statement averring lack of knowledge to "verify."  Rule 56 demands more.  Moreover, upon review of the docket, neither party engaged in any discovery efforts, nor argued that additional time was needed for discovery.

**Brown v. ATF**                                                    **1:22cv80**

MEMORANDUM OPINION AND ORDER

See Rule 56(d).  Thus, there is no genuine issue of material fact present here.  See Rule 56(e)(2).

## II.  PROCEDURAL HISTORY

On August 30, 2022, Brown, pro se, filed suit against the ATF, the Director, the Attorney General, and Patrick Morrisey, the West Virginia Attorney General.  ECF No. 1.  On the same date, summonses were issued to the initial defendants and notice of general guidelines for appearing pro se in federal court was given. ECF Nos. 3, 4.  The next day, the case was referred to the Honorable Michael J. Aloi, United States Magistrate Judge, for written orders or reports and recommendations on dispositive matters and for decisions of any other matters that may arise.  ECF No. 5; 28 U.S.C. §§ 636(b)(1)(A), 636(b)(1)(B); L.R. Civ. P. 7.02(c), 72.01.

On September 23, 2022, Brown's counsel filed a notice of appearance and moved for pro hac vice admission for a visiting attorney.  ECF Nos. 8-10.  On September 27, 2022, the First Amended Complaint for Declaratory Judgment and Injunctive Relief was filed on behalf of Brown, Weekley, SAF, and WVCDL, pleading allegations against Defendants ATF, Dettelbach, and Garland.  ECF No. 11.  The next day, summonses were issued to those defendants.  ECF No. 12. Because Plaintiffs retained counsel; the Court vacated its referral order and terminated the referred status of the case. ECF No. 14.

MEMORANDUM OPINION AND ORDER

On December 12, 2022, Defendants, by counsel, filed *Motion to Dismiss Plaintiffs' First Amended Complaint*. ECF Nos. 23, 24. Plaintiffs timely responded in opposition to Defendants' motion and moved for summary judgment. ECF Nos. 25, 27, 28, 29. Defendants replied in support of their motion to dismiss and in opposition to Plaintiffs' motion for summary judgment. ECF Nos. 30, 31, 33, 34, 35. Plaintiffs replied in support of their motion for summary judgment and in opposition to Defendants' motion. ECF No. 36. Plaintiffs and Defendants have filed supplemental authority during the pendency of their motions. ECF Nos. 37, 38, 39. Thus, the motions are fully briefed and ripe for review.

### III. <u>LAW</u>

**A. Legal Standards**

**1. Motion to Dismiss**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. A defendant challenges subject matter jurisdiction in two ways: (1) "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or (2) "that the jurisdictional allegations of the complaint [are] not true." <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). A challenge of subject matter jurisdiction in the first manner, as

MEMORANDUM OPINION AND ORDER
---

Defendants contend here, conjures "the same procedural protection . . . [the plaintiff] would receive under a Rule 12(b)(6) consideration." Id. (citing Adams, 697 F.2d at 1219).

Under Rule 12(b)(6), a defendant may move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

Brown v. ATF                                                        1:22cv80

MEMORANDUM OPINION AND ORDER

**2. Motion for Summary Judgment**

Summary judgment, however, is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

MEMORANDUM OPINION AND ORDER

### B. Applicable Law

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In District of Columbia v. Heller, 544 U.S. 570 (2008), the Supreme Court of the United States recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2122 (2022) (citing Heller, 544 U.S. at 570).  This right, however, is not unlimited: our Nation's historical tradition teaches that there are certain "longstanding," "presumptively lawful regulatory measures" that the Second Amendment did not abrogate.  Heller, 554 U.S. at 626–27, n.26.  The Heller court then set forth a two-step framework for assessing Second Amendment claims that combined a historical analysis with means-end scrutiny.  See United States v. Pruess, 703 F.3d 242, 245 (4th Cir. 2012) (citing Heller, 544 U.S. at 680).

In Bruen, the Supreme Court "kep[t] with Heller" but "decline[d] to adopt that two-part approach," finding it to be "one step too many." Bruen, 142 S. Ct. at 2126–27.  Bruen rejected any "means-end scrutiny" entirely.  Id. at 2125–26.  "Bruen effected a sea change in Second Amendment law."  Maryland Shall

### MEMORANDUM OPINION AND ORDER

Issue, Inc. v. Moore, 2023 WL 8043827, at *2 (4th Cir. Nov. 21, 2023) (Richardson, J.).  Bruen's holding is more rooted in textualism and originalism: if the "plain text [of the Second Amendment] covers an individual's conduct, [then] the Constitution presumptively protects that conduct."  Bruen, 142 S. Ct. at 2125-26.  "To justify its regulation, the government may not simply posit that the regulation promotes an important interest."  Id. To demonstrate the regulation of that conduct is within the bounds of the Second Amendment, "the government must demonstrate that the regulation is consistent with the Nation's historic tradition of firearm regulation.  Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  Id. at 2126.  As Heller also focused on the Nation's traditional understanding of the Second Amendment, this was not considered a novel pronouncement.  See id. at 2131 ("The test that we set forth in Heller and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.").

In Bruen, the Supreme Court emphasized that the petitioners were "two ordinary, law-abiding, adult citizens," making them "part of 'the people' whom the Second Amendment protects."  Id. at

MEMORANDUM OPINION AND ORDER

2119.  "Like most rights, the right secured by the Second Amendment
is not unlimited.  From Blackstone through the 19th-century cases,
commentators and courts routinely explained that the right was not
a right to keep and carry any weapon whatsoever in any manner
whatsoever and for whatever purpose . . . ."  Heller, 554 U.S. at
626.

"Although its meaning is fixed according to the
understandings of those who ratified it, the Constitution can, and
must, apply to circumstances beyond those the Founders
specifically anticipated."  Bruen, 142 S. Ct. at 2132 (internal
citation omitted).  Indeed, courts are instructed to use analogies
to "historical regulations of 'sensitive places' to determine that
modern regulations prohibiting the carry of firearms in *new* and
analogous sensitive places are constitutionally permissible."  Id.
(emphasis in original).

The Fourth Circuit recently summarized the task before this
Court.  The Supreme Court

> supplied an analysis centered on the Second
> Amendment's text and history.  [Bruen,] 142 S.
> Ct. at 2126-30.  The Court explained that
> "when the Second Amendment's plain text covers
> an individual's conduct, the Constitution
> presumptively protects that conduct."  Id. at
> 2126.  At that point, the challenged
> regulation is unconstitutional unless the
> government can show that "the regulation is
> consistent with this Nation's historical
> tradition of firearm regulation."  Id.  Only
> then "may a court conclude that the

**Brown v. ATF**                                                              **1:22cv80**

MEMORANDUM OPINION AND ORDER

> individual's conduct falls outside the Second
> Amendment's 'unqualified command.'"  Id.
> (quoting Konigsberg v. State Bar of Cal., 366
> U.S. 36, 50 n.10 (1961)).

Maryland Shall Issue, Inc., 2023 WL 8043827, at *3.

With this context, 18 U.S.C. § 922(b)(1) makes it

> unlawful for any licensed importer, licensed
> manufacturer, licensed dealer, or licensed
> collector to sell or deliver [] any firearm or
> ammunition to any individual who the licensee
> knows or has reasonable cause to believe is
> less than eighteen years of age, and, if the
> firearm, or ammunition is other than a shotgun
> or rifle, or ammunition for a shotgun or
> rifle, to any individual who the licensee
> knows or has reasonable cause to believe is
> less than twenty-one years of age.

18 U.S.C. § 922(c)(1) prohibits FFLs from selling firearms to those

who do not appear in person unless the buyer submits a sworn

statement affirming he or she is "twenty-one years or more of age"

"in the case of any firearm other than a shotgun or rifle."  ATF's

implementing regulations are 27 C.F.R. § 478.99(b) and § 478.124.

Chief Counsel of the ATF wrote an opinion letter in 1983 explaining

that FFLs

> are prohibited from selling or delivering
> handguns to person under the age of
> 21. However, a minor or juvenile is not
> prohibited by Federal law from possessing,
> owning, or learning the proper usage
> of firearms since any firearm that the parents
> or guardian desire the minor to have can be
> obtained by the parents or guardian.

---

**MEMORANDUM OPINION AND ORDER**

---

ECF No. 24-1, Ex. A, Opinion of the Chief Counsel of ATF, No 23362
(Dec. 5, 1983) (hereinafter the "ATF Opinion Letter").

## IV.  <u>DISCUSSION</u>

Because adults between eighteen and twenty years old are
statutorily precluded by 18 U.S.C. §§ 922(b)(1) and (c)(1) from
buying handguns and handgun ammunition from a licensed dealer,
Plaintiffs challenge the statutes as facially unconstitutional and
as applied to them.  Plaintiffs also request an injunction barring
enforcement of the statute for the same reason.

Defendants filed the pending motion to dismiss pursuant to
Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
and argue Plaintiffs lack standing to bring this action, and even
if they have standing, the historical background of the Second
Amendment supports the government's restriction of the purchase of
handguns and handgun ammunition to lawful adult citizens over the
age of twenty-one. ECF Nos. 23, 24.

Plaintiffs filed their motion for summary judgment and
response in opposition to Defendants' motion to dismiss,
contending they have standing to sue and 18 U.S.C. §§ 922(b)(1)
and (c)(1) are both facially unconstitutional and unconstitutional
as applied to them because the statutes are inconsistent with the
Nation's historical tradition.  ECF Nos. 28, 29.

MEMORANDUM OPINION AND ORDER

**A. Standing**

The Court, of course, starts with jurisdiction particularly given Defendants advance a standing challenge to Plaintiffs' claims. The judicial power vested by Article III of the Constitution extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Because federal court jurisdiction is limited to cases or controversies, plaintiffs must "establish they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). Thus, the Court must first address Plaintiffs' standing to bring suit as challenged in Defendants' motion. See Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 252 (4th Cir. 2020) ("Article III standing is 'part and parcel of the constitutional mandate that the judicial power of the United States extend only to "cases" and "controversies".'") (internal citation omitted). Article III standing is proven when plaintiffs have established an injury-in-fact, causation, and redressability. Baehr, 953 F.3d at 252 (citing Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992)). The burden to establish standing is on the party asserting it. Lujan, 504 U.S. at 560-61.

"An association has associational standing when at least one of its 'identified' members 'would otherwise have standing to sue in their own right, the interests at stake are germane to the

14

MEMORANDUM OPINION AND ORDER

organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec., 983 F.3d 671, 683 (4th Cir. 2020) (internal citation omitted). Defendants allege Plaintiffs lack standing because they have failed to demonstrate an injury-in-fact.[2]

To establish an injury-in-fact, a plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 332 (2016) (citing Lujan, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," and it is concrete if it is "'de facto'; that is, it must actually exist." Id. at 339–40 (citations omitted).

Brown and Weekley contend they have suffered an injury-in-fact because they wish to purchase handguns and handgun ammunition from FFLs but are precluded by statute because of their ages. Brown and Weekley have each attempted to purchase handguns and associated ammunition from FFLs but have been turned away. ECF

---

[2] The Government does not challenge either the causation or redressability prongs of the standing analysis. The burden of showing standing rests on Plaintiff. See Heater v. General Motors, LLC, 568 F. Supp.3d 626, 643 (N.D.W. Va. 2021) (citing Lujan, 504 U.S. at 560-61) (Keeley, J.). The Court, upon review of the record, finds that burden has been met on both causation and redressability.

**Brown v. ATF**                                                    **1:22cv80**

<u>MEMORANDUM OPINION AND ORDER</u>

No. 28-3, Brown Decl.; ECF No. 28-2, Weekley Decl. Defendants argue Brown and Weekley have not suffered an injury at all because federal statutes and regulations do not preclude 18-, 19-, and 20-year-olds from *possessing* handguns and handgun ammunition, so long as Plaintiffs' parents or guardians purchase them from FFLs as a bona fide gift. ECF No. 24.

Defendants generally miss the point and Plaintiffs' injury is clear. Plaintiffs do not dispute that 18-to-20-year-olds who are law-abiding adults and not otherwise banned from firearm possession are not prohibited from possessing handguns. Brown and Weekley's injury prompting the filing of this suit is that they cannot *purchase* handguns and handgun ammunition from FFLs as a result of the age-based ban.

Defendants' specific arguments are likewise unavailing. First, the suggestion Plaintiffs suffer no injury because a parent or guardian can simply purchase the gun and give it to an 18- to 20-year-old overly minimizes Plaintiffs' plight. Deprivation of a constitutional right is a deprivation and, necessarily, an injury in fact, no matter if an "easy" and lawful work-around exists. Moreover, the Supreme Court of the United States previously rejected the Government's reasoning in a different context. In <u>Brown v. Entertainment Merchants Association</u>, 564 U.S. 786, 802 (2011) the Supreme Court, deciding a First Amendment issue, struck

MEMORANDUM OPINION AND ORDER

down a California law prohibiting the sale (but not the possession) of violent video games to children under the age of 18. Like this statute, the California law allowed parents (or aunts and uncles) to purchase and provide the games to children. Id. Yet, the Supreme Court found this prohibition on the sale of games implicated children's First Amendment rights and proceeded to strike down the regulation under a **strict scrutiny** analysis. Id. at 805 (emphasis added).

Brown and Weekley's injury, therefore, is not solved by the ability to receive a gift of a handgun from a parent or guardian. See Fraser v. ATF, 2023 WL 3355339 (E.D. Va. 2023) (holding 18-to-20-year-olds have standing to challenge the age-based handgun ban and the statutory age prohibition violates the Second Amendment); see also Nat. Rifle Ass'n of Am., Inc. v. ATF, 700 F.3d 185, 191-92 (5th Cir. 2012) ("by prohibiting FFLs from selling guns to 18-to-20 year-olds, the laws cause those persons a concrete particularized injury-i.e., the injury of not being able to purchase handguns from FFLs.").

The Government's suggestion erroneously draws too large a distinction between the right to possess and the right to purchase a firearm. Although the Second Amendment does not expressly protect the right to "purchase" firearms, that right must exist by implication if the right to "keep and bear arms" is to have its

MEMORANDUM OPINION AND ORDER

full meaning and effect. "Commonsense and logic tell us that, unless one is a maker of guns, the right to 'keep'/have a gun necessarily means that one must purchase it, steal it, be given it by another, or find one that another has lost." Fraser, 2023 WL 5617899, at *7.

Judge Payne's analysis in Fraser proved prescient. Unlike him, the Court now has the benefit of the Fourth Circuit's decision in Maryland Shall Issue, Inc. v. Moore.[3] There, in the context of determining whether purchasing a firearm falls within the scope of the Second Amendment's protection, see infra, the Fourth Circuit found the issue "not complicated." Id. at *4. "If you do not **already** own a handgun, then the only way to 'keep' or 'bear' one is to get one, either through sale, rental, or gift." Id. (emphasis in original). The Fourth Circuit also dismissed the suggestion that the 30-day waiting period at issue there under Maryland law was not a sufficient deprivation to run afoul of the Second Amendment. Discussing the Founders' use of "infringed" in the Amendment's text, the court left the issue undecided but noted the "Second Amendment's scrutiny is not exclusively reserved for

---

[3] The Court was finalizing this Memorandum Opinion as the Maryland Shall Issue opinion was published on November 21, 2023.

MEMORANDUM OPINION AND ORDER

laws that wholly or effectively prohibit firearm possession." <u>Id.</u> at *5 n.8.[4]

This Court, therefore, has no hesitation concluding Plaintiffs' have sufficiently pled and demonstrated an injury-in-fact. The ban 18 U.S.C. § 922 imposes on 18-to-20-year-old law-abiding citizens is a more significant deprivation than the 30-day waiting period in <u>Maryland Shall Issue</u>. There, the Fourth Circuit concluded "the temporary deprivation that Plaintiffs allege is a facially plausible Second Amendment violation." <u>Maryland Shall Issue, Inc.</u>, 2023 WL 8043827, at *5. Thus, the individual Plaintiffs have standing.

Because the individual plaintiffs have established Article III standing, and they are members of WVCDL, WVCDL has standing. <u>Outdoor Amusement Bus. Ass'n</u>, 983 F.3d at 683; <u>see also</u> <u>Firearms Policy Coalition, Inc. et al. v. McCraw</u>, 623 F. Supp.3d 740, 746-47 (N.D. Tex. 2022). Because Plaintiffs have standing to bring suit, Defendants' Rule 12(b)(1) motion is **DENIED** on this ground.

---

[4] In addition, the decision of the Fourth Circuit in <u>Lane v. Holder</u>, 703 F.3d 668 (4th Cir. 2012), although not directly dispositive, is instructive. In <u>Lane</u>, the court assessed the issue of standing in the Second Amendment context. Although the Fourth Circuit ultimately held the <u>Lane</u> plaintiffs (would-be firearms purchasers) had no standing, it contrasted the regulations in question there with regulations that would burden consumers "directly." <u>Id.</u> at 672. The statute and regulations Plaintiffs challenge here do just that.

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

**B. Plaintiffs' Constitutional Challenge to 18 U.S.C. § 922(b)(1) and 18 U.S.C. § 922(c)(1)**

**1. The act of purchasing a firearm is protected by the Second Amendment.**

First, the Court must determine whether the act of purchasing a firearm is within the Second Amendment's "right to keep and bear arms." See Bruen, 142 S. Ct. at 2126; see also Maryland Shall Issue, Inc., 2023 WL 8043827, at *5 ("So [Plaintiffs] just need to show that the law regulates a course of conduct that falls within the Amendment's plain text, i.e., their ability "to possess and carry weapons in case of confrontation.'" (quoting Heller, 554 U.S. at 592)). If it does, "the Constitution presumptively protects that conduct." Bruen, 142 S. Ct. at 2126. Plaintiffs maintain "[t]he right to keep arms necessarily implies there is a right to acquire arms." ECF No. 29 at 12.

It appears the Fourth Circuit now agrees. Again, in Maryland Shall Issue, Inc., Judge Richardson observed:

> To start, you might note that the Amendment's text protects only the right to "keep and bear" arms. U.S. Const. amend. II. But, on its face, the challenged law says nothing about whether Plaintiffs may "keep" or "bear" handguns. It only restricts Plaintiffs' ability to "purchase, rent, or receive" them. § 5-117.1(c). How, then, does the law regulate the right to keep and bear arms?
>
> The answer is not complicated. If you do not **already** own a handgun, then the only way to "keep" or "bear" one is to get one, either through sale, rental, or gift. And the

20

MEMORANDUM OPINION AND ORDER

> challenged law cuts off all three avenues—at
> least, for those who do not comply with its
> terms.

Maryland Shall Issue, Inc., 2023 WL 8043827, at *4 (emphasis in original).  The Court notes that Maryland Shall Issue, Inc. "appears" to answer the question presented here as that case focused more on the perceived tension between temporary or permanent bans on possession or acquisition of firearms.  Thus, the Court continues its analysis of this question which leads to the same conclusion required under Judge Richardson's recent opinion.

At the first step, Bruen requires a court to conduct a "textual analysis" that is "focused on the 'normal and ordinary' meaning of the Second Amendment's language."  Id. at 2127 (quoting Heller, 554 U.S. at 576–77); see also Maryland Shall Issue, Inc., 2023 WL 8043827, at *3 ("The first question Bruen asks is whether Plaintiffs' proposed course of conduct is protected by the Second Amendment's plain text." (citation omitted)).  This inquiry into the "normal meaning" of the "words and phrases used" is backward looking, focused on what those words meant in 1791 when the Second Amendment was ratified, and "excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation."  Heller, 554 U.S. at 576–77.  A court applying the first step of "Heller's methodological approach," Bruen, 142 S.

MEMORANDUM OPINION AND ORDER

Ct. at 2127, can employ several tools in discerning the text's normal and ordinary meaning.  These may include: (1) comparison of a phrase within the Second Amendment to the same or similar language used elsewhere in the Constitution, Heller, 554 U.S. at 579–81 (comparing "right of the people" in the Second Amendment to the same and similar language in the First, Fourth, and Ninth Amendments); (2) consideration of historical sources, including dictionaries, founding-era statutes, 18th-century legal treatises, and others, that could suggest a common understanding of the terms used, id. at 581–92 (examining the meaning of "keep and bear arms"); and (3) evaluation of the historical background leading to the Second Amendment's adoption, id. at 592–95. See also Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco, and Explosives, 5 F.4th 407, 418–19, 421–23 (4th Cir. 2021) (discussing sources relevant to understanding the original public meaning of the Second Amendment), vacated as moot, 14 F.4th 322, 328 (4th Cir. 2021); Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 714 F.3d 334, 337 (5th Cir. 2013) ("NRA II") (Jones, J., dissenting from denial of rehearing en banc) ("First, the text of the Constitution was interpreted [in Heller] in light of historical documents bearing on each phrase and clause of the

MEMORANDUM OPINION AND ORDER

Second Amendment as those were understood at the time of its drafting.").[5]

Being a functional prohibition on handgun buyers, the statutes at issue "make it considerably more difficult for a person lawfully to *acquire* and keep a firearm, including a handgun, for the purpose of self-defense in the home—the 'core lawful purpose' protected by the Second Amendment." Heller v. District of Columbia, 670 F.3d 1124, 1256 (D.C.C. 2011) (emphasis added). Common sense also tells us that the right to keep and bear arms includes the right to purchase them. See also Fraser, 2023 WL 3355339, *8 (finding "consistent with the text and logic of the Second Amendment . . . the right to purchase a gun falls within the Second Amendment's plain text."). The Court finds Judge Payne's reasoning here particularly astute and, therefore, persuasive.

> The Second Amendment accords protection of "the right of the people to keep and bear Arms," by providing that the right "shall not be **infringed**." U.S. Const. Amend. II (emphasis added). The Second Amendment is unique in its use of "infringed" for the word does not appear anywhere else in the Constitution. Despite its uniqueness, the term "infringed" has received little attention

---

[5] Judge Jones' opinion was a dissenting one; however, her reasoning, including her discussion of Heller's analytical approach, largely tracks the test clarified in Bruen. Furthermore, as Plaintiffs note in their briefing, her discussion of the historical framework surrounding ratification of the Second Amendment stands unassailed.

MEMORANDUM OPINION AND ORDER

by scholars or courts.  However, <u>Heller</u> took the view that "infringed" "implicitly recognizes the pre-existence of the right." 554 U.S. at 592.  As articulated in <u>Heller</u>, the Second Amendment does not serve to grant a right but rather preserves a right that the people already possessed.  Therefore, to "keep and bear" serves to identify the right protected, not to define the right in the first instance.

The definition of "infringe" further supports the conclusion that the pre-existing right includes a right to purchase.  "Infringe" is defined in modern dictionaries as "to encroach upon in a way that violates law or the rights of another."  "Infringe," <u>Merriam-Webster.com</u>.  "Encroach," in turn, has two definitions: "to enter by gradual steps or by stealth into the possessions or rights of another" and "to advance beyond the usual or proper limits."  "Encroach," <u>Merriam-Webster.com</u>.  Those words have possessed the same meaning since the sixteenth century and the Founders would have understood them in the same way.  Not simply protecting the heartland of the preserved right, the Second Amendment protects the environs surrounding it to prevent any encroachment on the core protections.  Thus, by virtue of the word "infringed," the Second Amendment's protective textual embrace includes the conduct necessary to exercise the right ("to keep and bear") and that, as explained above, includes the right to purchase arms so that one can keep and bear them.

<u>Id</u>. at *7.

MEMORANDUM OPINION AND ORDER

The Court's conclusion here is in line with decisions of multiple federal courts of appeal[6] which, when ascertaining the textual reach of the Second Amendment, "have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." Teixeira v. Cnty. of Alameda, 873 F.3d 670, 677 (9th Cir. 2017).  Among these rights is "the ability to acquire arms." Id. at 677-78 (citing to Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011)).  District courts have concluded the same.  See United States v. Quiroz, 629 F.Supp.3d 511, 516 (W.D. Tex. 2022); Ill. Ass'n of Firearms Retailers v. City of Chi., 961 F.Supp.2d 928, 930 (N.D. Ill. 2014); see also Fraser, 2023 WL 3355339, at *8;

---

[6] Again, the Fourth Circuit in Maryland Shall Issue, Inc. appears to have recently addressed this question.  Nonetheless, its prior decisions also provide support for the conclusion reached here. In United States v. Hosford, the Fourth Circuit concluded the Second Amendment does not provide a constitutional right to **sell** firearms.  843 F.3d 161, 166 (4th Cir. 2016).  There, the court held, consistent with the Heller exceptions, "the prohibition against unlicensed firearm dealing is a longstanding condition or qualification on the commercial sale of arms and is thus facially constitutional." Id.  Hosford distinguished the constitutional regulations in question governing the commercial sale of firearms, from regulations infringing on individuals' ability to "purchase or sell firearms owned for personal, self-defensive use." Id. at 168.  This leads to the natural and logical conclusion the Fourth Circuit considers the right to purchase a firearm commensurate to the right to keep a gun.  See Sitzmann, "High-Value, Low-Value, and No-Value Guns," 86 U. Chi. L. Rev. at 2023 ("the Fourth, Ninth, and Seventh Circuits all support a single, underlying message: there is no individual right to sell a firearm conferred by the Constitution, even though there is a right to acquire and use one").

MEMORANDUM OPINION AND ORDER

McCraw, 623 F. Supp.3d 740; and, Worth v. Harrington, Case No. 21-
CV-1348, 2023 WL 2745673 (D. Minn. March 31, 2023).  As the
Northern District of Illinois concluded, "the ban on guns sales
and transfers prevents [individuals] from fulfilling ... the most
fundamental pre-requisite of legal gun ownership–that of simple
acquisition."  Ill. Ass'n of Firearms Retailers, 961 F.Supp.2d at
938.

Because "the substance of the challenged laws dictates that
they are a functional prohibition on buyers," Hirschfeld, 5 F.4th
at 417, vacated by 14 F.4th 322 (4th Cir. 2021), and the act of
purchasing a handgun is within the bounds of the Second Amendment,
Heller, 670 F.3d at 1256, the Court turns to whether 18-to-20 year
olds are included in "the people" of the Second Amendment.  See
Maryland Shall Issue, Inc., 2023 WL 8043827, at *3 (summarizing
the two-part assessment – "course of conduct" and "the people").

### 2. 18-to-20-year-old law abiding citizens are part of "the people" whom the Second Amendment protects.

Next the Court analyzes whether, under the Second Amendment,
"ordinary, law-abiding, adult citizens" between the ages of 18-
to-20 years, are "part of 'the people' whom the Second Amendment
protects." Bruen, 142 S. Ct. at 2119.  The Court finds that they
are.

Initially, and as Bruen requires, the Court starts with the
actual text of the Second Amendment which is silent as to any age

MEMORANDUM OPINION AND ORDER

requirements or restrictions on the rights enshrined therein.  That
omission is significant when compared to other Constitutional
provisions.    For  example,  minimum  age  requirements  are
constitutionally  imposed  on  membership  in  the  House  of
Representatives (25 years of age), the United States Senate (30
years age) and, of course, the office of President of the United
States (35 years of age).  See U.S. Const. art I, § 2; art. I, §
3 and art. II, § 1.   Clearly, the authors of the original
Constitution and the Bill of Rights contemplated age restrictions
during their drafting work.  The Second Amendment only refers to
"the  people."   Heller  labeled  "the  people"  a  term  of  art
encompassing "all members of the political community, not an
unspecified subset."  Heller, 554 U.S. at 580.

    Although the Supreme Court "has not precisely defined" the
meaning of "the people" in the Second Amendment, it has provided
guidance as to the reach of the term as used in the Constitution.
See United States v. Jackson, No. ELH-22-141, 2023 WL 2499856, at
*6 (D. Md. March 13, 2023).  For example, the Supreme Court has
noted

           "the  people"  protected  by  the  Fourth
           Amendment,  and  by  the  First  and  Second
           Amendments, ... refers to a class of persons
           who are part of a national community or who
           have   otherwise   developed   sufficient
           connection with this country to be considered
           part of that community.

MEMORANDUM OPINION AND ORDER

United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990). Specific to the Second Amendment, the Court is mindful of Heller's command that "a strong presumption [exists] that the Second Amendment right is exercised individually and belongs to **all Americans**." Heller, 554 U.S. at 581 (emphasis added).

Other constitutional provisions lend credence to a broad interpretation of the phrase "the people." The First and Fourth Amendments, like the Second, refer to "the people." And both Heller and Verdugo-Urquidez strongly suggest that the term "the people" is defined consistently throughout the Constitution. On this point, the First Amendment has been interpreted to apply to all persons, even those under the age of 18. See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969) (free speech); see also W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943) (free exercise). And while the First Amendment is limited in some contexts (such as the forum or content of the speech), age does not serve as a basis for limiting the constitutionally protected right. See Tinker, 393 U.S. at 506 ("First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.").

<u>MEMORANDUM OPINION AND ORDER</u>

The Fourth Amendment likewise protects individuals regardless of age.  <u>See</u> <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 334 (1985).  Certainly, the context of a search — e.g., whether on or off school property — can affect the expectations of privacy.  <u>Id</u>. at 337–40.  But the expectation of privacy is not affected based on the age of the person being searched.  Rather, the context of a search is the distinguishing factor.  <u>See</u> <u>id</u>.

Therefore, because neither the First nor Fourth Amendments exclude, nor have been interpreted to exclude, 18-to-20-year-olds, the Court can discern no reason to read an implicit age restriction into the Second Amendment's plain text either.

Beyond the First and Fourth Amendments, other constitutional provisions, which do not specifically mention "the people," support the Court's conclusion that "the people" protected by the Second Amendment include 18-to-20-year-olds.  On this point, neither the Fifth Amendment nor the Fourteenth Amendment exclude— or have been interpreted to exclude—18-to-20-year-olds.  <u>See,</u> <u>e.g.,</u> <u>Fisher v. Univ. of Tex.</u>, 579 U.S. 365, 136 S. Ct. 2198, 2210 (2016) (equal protection); <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975) (due process); <u>Kent v. Dulles</u>, 357 U.S. 57, 65–66 (1958) (travel); <u>Brown v. Bd. of Educ.</u>, 347 U.S. 483, 493 (1954) (equal educational opportunities).  Likewise, regarding the Eighth Amendment, the Supreme Court has said that where "a line must be drawn," "[t]he

MEMORANDUM OPINION AND ORDER

age of 18 is the point where society draws the line for many purposes between childhood and adulthood." Roper v. Simmons, 543 U.S. 551, 574 (2005).   In short, neither the Second Amendment's text itself nor the ample Supreme Court precedent interpreting other constitutional provisions referring to "the people" support any conclusion other than the one made here.

The Court likewise considers the Fourth Circuit's guidance[7] on this question.

> First, nothing in the text of the Second
> Amendment limits its application by age.
> Second, the most analogous rights to the
> Second Amendment, those in the First and
> Fourth Amendments, similarly contain no age
> limits.   Third, most other constitutional

---

[7] Of course, this Court is bound to faithfully apply Fourth Circuit precedent when applicable. See Rettig v. All. Coal, LLC, No. 2:21-CV-08, 2023 WL 5673961, at *3 (N.D.W. Va. Sept. 1, 2023) (citing United States v. Brown, 74 F. Supp. 2d 648, 652 (N.D.W. Va. 1998) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court.")).   The Hirshfield opinion, having been vacated, is no longer binding precedent but remains instructive. See Maryland Shall Issue, Inc., 2023 WL 8043827, at *8 (relying on Hirschfeld to summarize Founding Era militia laws).

Notably, since Hirschfeld, the Fourth Circuit marked the significance of the "the people" prong of Bruen's analysis. Leaving the specific contours of that definition to another day because the parties had stipulated to it, the Maryland Shall Issue, Inc. court observed "[t]his is not necessarily to say that 'the people' is limited to 'ordinary, law-abiding, adult citizens.' Post-Bruen, several courts have held that 'the people' refers to all Americans, and is not limited to ordinary, law-abiding adult citizens." Maryland Shall Issue, Inc., 2023 WL 8043827, at *4 n.5 (citing as an example United States v. Silvers, No. 5:18-cr-50-BJB, 2023 WL 3232605, at *5-6 (W.D. Ky. May 3, 2023)).

MEMORANDUM OPINION AND ORDER

> rights are not age limited. And fourth, the
> few rights that may not apply to those under
> 18 or that change by age are not analogous to
> the Second Amendment, and most of those rights
> become applicable at age 18, not 21.

Hirschfeld, 5 F.4th at 421, vacated by 14 F.4th 322 (4th Cir.

2021).  Indeed, the Fourth Circuit found the statutorily prohibited

age group of 18-to-20-year-olds are part of "the people" included

in the Second Amendment's protection.  Id.  The Fourth Circuit

reasoned "[t]he Second Amendment refers to the 'right of the

people,' which is a phrase also used in the First and Fourth

Amendments to denote an individual right," neither of which

delineate age groups and instead "codify a pre-existing,

fundamental, inalienable individual right."  Id. at 422 (citing

Heller, 554 U.S. at 579, 592).  Of course, "'minors' First

Amendment rights are qualified to some degree, see Tinker, 393

U.S. at 506, 513, 89 S.Ct. 733, but those qualifiers do not

eliminate the rights altogether."  Id.  From this, the Fourth

Circuit "emphasize[d] that the First and Fourth Amendments'

protection of 'the people,' including those under 18, confirms

that 'the people' protected by the Second Amendment includes at

least those 18 and older."  Id.  "Indeed, it would be odd to treat

the Second Amendment like marriage and sex rather than

contemporaneously ratified rights such as the First and Fourth

Amendments that have been described as fundamental pre-existing

MEMORANDUM OPINION AND ORDER

rights analogous to the Second Amendment." Id. at 423. "[I]t is hard to conclude that 18- to 20-year-olds have no Second Amendment rights when almost every other constitutional right affords them protection." Id. at 424.

Considering this analysis, the Court concludes 18-to-20-year-old law abiding citizens are part of "the people" who the Second Amendment protects. Plaintiffs themselves and the activity which federal law and regulation currently prevent them from undertaking are covered under the Second Amendment's umbrella of constitutional freedoms. Thus, the burden shifts to Defendants who must demonstrate the challenged statutes are constitutionally permissible under Bruen. See Maryland Shall Issue, Inc., 2023 WL 8043827, at *6 ("At Bruen's second step, [the Government] must provide historical evidence that justifies its law.").

**3. The Government cannot meet its burden to show 18 U.S.C. §§ 922(b)(1) or 922(c)(1) are consistent with our Nation's historical tradition of firearm regulation.**

If the normal and ordinary meaning of the Second Amendment's text protects the individual's proposed course of conduct, which the Court finds to be the case here, then the Amendment "presumptively guarantees" the individual's right related to firearms, and the burden falls on the Government to justify the challenged regulation. Bruen, 142 S. Ct. at 2135. The Government bears the burden to show that the law is "consistent with this

MEMORANDUM OPINION AND ORDER

Nation's historical tradition of firearm regulation." Id. at 2126-27, 2135; Heller, 544 U.S. at 580.  "To do this, it may identify a 'historical analogue' demonstrating that its law falls within a historically recognized exception to the right to keep and bear arms." Maryland Shall Issue, Inc., 2023 WL 8043827, at *6 (citing Bruen, 142 S. Ct. at 2132-33).

This necessarily requires the "reasoning by analogy" contemplated by the Bruen Court.  Bruen, 142 S. Ct. at 2132.  The Government must identify historical firearm regulations that are consistent with the modern, challenged regulation, and courts must decide whether a "historical regulation is a proper analogue" through "a determination of whether the two regulations are "'relevantly similar.'" Id. (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 774 (1993)).  Courts applying Bruen must consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." Id. at 2133.  However, the Court has cautioned that "[t]his does not mean that courts may engage in independent means-end scrutiny under the guise of analogical reasoning." Id. at 2133 n.7.

In the Defendants' attempt to "justify [the Government's] regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," they cite to William

**Brown v. ATF**                                                          **1:22cv80**

MEMORANDUM OPINION AND ORDER

Blackstone commentaries and other "longstanding" state laws prohibiting sales of firearms to persons under 21. ECF No. 24 at 14. Notably, Defendants argue that, historically, a person's age of 21 is the age of majority. Id.; see also ECF No. 24-2, Ex. B. Our Nation's history, however, points to a different conclusion.

Defendants spend time collecting state laws proscribing age barriers to the possession and purchase of firearms between the years of 1856 and 1993. ECF No. 24-2, Ex. B. However, "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Heller, 544 U.S. at 634-35; see also Bruen, 142 S. Ct. at 2137 ("the scope of the protection applicable to the Federal Government . . . is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). Defendants' reliance on mostly 19th century gun safety regulations as their justification in regulating the 18-to-20-year-old age group is misplaced under Heller and Bruen.[8]  When later evidence

---

[8] Plaintiffs here challenge the constitutionality of federal statutes and regulations. While some Courts have been faced with the question of which date – the Bill of Rights including the Second Amendment was ratified in 1791 and the Fourteenth Amendment was ratified in 1868 - should be more relevant considering the Fourteenth Amendment's extension of the Second Amendment to the states, see, e.g., Worth, 2023 WL 2745673, at *10, that quandary is not presented in this case.

MEMORANDUM OPINION AND ORDER

"contradicts earlier evidence," it "cannot provide much insight into the meaning of the Second Amendment." Bruen, 142 S.Ct. at 2154.

At the time of the ratification of the Second Amendment in 1791, eighteen (18) was the age of majority for militia service throughout the nation. Although, in 1775, sixteen-year-olds were expected to fight in the Revolutionary War. United States v. Blakeney, 3 Gratt. 405, 441 (Va. 1847) ("During the war of the revolution, sixteen was the military age.").

In 1792, the United States Congress "specified that 'each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia.'" Heller, 544 U.S. at 596 (quoting Second Militia Act of 1792 § 1, 1 Stat. 271). Indeed,

> [t]he Militia Act further required every member of the militia to "provide himself with a good musket or firelock . . . or with a good rifle." Id. Over the next few years, every state revised its existing militia laws to conform with the federal statute. In each of these state statutes, the states adopted a militia age of 18 and required militiamen to arm themselves.

Fraser, 2023 WL 3355339, at *17 (quoting Second Militia Act of 1792 § 1) (collecting laws of states and commonwealths implementing

militia majority age of 18 between the years of 1792 and 1807);
see also United States v. Miller, 307 U.S. 174, 179 (1939) ("And
further, that ordinarily when called for service these men were
expected to appear bearing arms supplied by themselves and of the
kind in common use at the time."). "[B]y the eve of the Civil
War, only three states had passed any form of restrictions on the
ability of minors to purchase firearms and each of these was passed
65 years or more after the ratification of the Second Amendment."
Fraser, 2023 WL 3355339, at *21; see also McCraw, 623 F. Supp.3d
at 750 (citing Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco,
Firearms & Explosives, 714 F.3d 334 (5th Cir. 2013) (Jones, J.,
dissenting)) ("Likewise, at the time of the founding, most states
had similar laws requiring militia service for 18-to-20-year-
olds."). Thus, the historical data close in time to ratification
in 1791 confirms 18-to-20-year-olds have the right to keep and
bear arms and are protected as part of "the people" under the
Second Amendment.

Following briefing, the Government filed a Notice of
Supplemental Authority [ECF No. 37] on March 9, 2023, alerting the
Court to the Eleventh Circuit's decision issued that same day in
National Rifle Association v. Bondi, 61 F.4th 1317 (11th Cir.
2023). There, the Eleventh Circuit found a Florida statute
limiting the ability of 18-to-20-year-olds to purchase firearms

**Brown v. ATF**                                                    **1:22cv80**

MEMORANDUM OPINION AND ORDER

did not violate the Second Amendment.  See id. at 1332.  The Bondi

court focused on whether the ratification era of the Second or

Fourteenth Amendment primarily informed its assessment of the

historical tradition of American firearm regulation.  See id. at

1321-1332.  As discussed supra at n.6, that assessment is much

less relevant here given Plaintiffs' challenge to a federal

statute.[9]

Regardless, the Bondi decision was **vacated** on July 14, 2023,

when the Eleventh Circuit granted a petition for rehearing and

decided to rehear the case en banc.  72 F.4th 1346 (Mem.) (11th

Cir. 2023).  Thus, the authority to which Defendants point the

Court is no longer "authority."  To date, Defendants have

inexplicably failed to update or withdraw their Notice of

Supplemental Authority despite the fact that the Eleventh Circuit

opinion—published over fourth months ago—vacates the Bondi panel's

opinion **and** dedicates significant time in their papers discounting

the Fourth Circuit's Hirschfeld opinion for the same reason.

---

[9] The Bondi court undertook an extensive and thorough analysis
compiling historical analogues relevant to its inquiry of the
historical understanding at the time the Fourteenth Amendment was
ratified during Reconstruction (1866).  This Court finds further
support for its conclusion that the Founding Era analogues weigh
in favor of Plaintiffs' position here as the Bondi opinion's
appendix tracks state laws regulating firearm purchases by 18-to-
20-year-olds spanning origins from 1855 into 1897 – well after the
Second Amendment's ratification date in 1791.  See id. at 1333-
38.

Brown v. ATF                                                    1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

The core issue the Court must answer under <u>Bruen</u> remains whether our Nation's history and tradition contains "analogous" restrictions on the ability of 18-to-20-year-olds to purchase firearms.  <u>Bruen</u>, 145 S. Ct. at 2133.  Defendants have not presented any evidence of age-based restrictions on the purchase or sale of firearms from before or at the Founding or during the Early Republic.  Defendants have likewise failed to offer evidence of similar regulation between then and 1791 or in a relevant timeframe thereafter.  For that reason alone, Defendants have failed to meet the burden imposed by <u>Bruen</u>.  The Court once again finds Judge Payne's reasoning highly persuasive.

> Finally, the lack of analogous evidence of Founding-era regulations demonstrates that the statutes and regulations at issue are inconsistent with the Second Amendment. Since time immemorial, teenagers have been, well, teenagers. The "general societal problem" of teenage impetuousness and rashness far proceeded the Founding. <u>Bruen</u>, 142 S.Ct. at 2131. Yet, that fact notwithstanding, the Government has not demonstrated that the Founders dealt with this problem in a "distinctly similar" way to the statutes and regulations at issue. <u>Id</u>. The lack of analogous regulations permits a finding that the Founders considered age-based regulations on the purchase of firearms to circumscribe the right to keep and bear arms confirmed by the Second Amendment.

<u>Fraser</u>, 2023 WL 3355339, at *21.  More succinctly stated, "[w]hile some gun regulations existed at the Founding, there were no regulations restricting minors' ability to possess or purchase

MEMORANDUM OPINION AND ORDER

weapons until two states adopted such laws in 1856." Hirschfeld, 5 F.4th at 437.[10]

In summary, because Plaintiffs' conduct – the purchase of handguns – "fall[s] [within] the Second Amendment's 'unqualified command'" and the challenged statutes and regulations are not "consistent with the Nation's historic tradition of firearm regulation," the Court **FINDS** 18 U.S.C. §§ 922(b)(1) and (c)(1) facially unconstitutional and as applied to Plaintiffs. Plaintiffs having demonstrated there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law, their Motion for Summary Judgment [ECF No. 28] is **GRANTED**. For the same reasons,[11] Defendants' Motion to Dismiss [ECF No. 24] is **DENIED**.

## V.    CONCLUSION

For the reasons discussed, the Court **DENIES** Defendant's Motion to Dismiss [ECF No. 23] and **GRANTS** Plaintiffs' Motion for Summary Judgment [ECF No. 28]. Defendants are **ENJOINED** from

---

[10] Again, although Hirschfeld itself was vacated, the historical analysis and summary detailed in that opinion remains accurate. See Maryland Shall Issue, Inc., 2023 WL 8043827, at *8 (relying on Hirschfeld for historical perspective). Thus, like Judge Jones' dissent in NRA II, the Court considers it both instructive and highly persuasive.
[11] Rule 12 and Rule 56 obviously require the Court to employ different standards; however, for the same reasons the Court grants their summary judgment motion, Plaintiffs have obviously stated a plausible claim for relief in their Amended Complaint. See Salazar v. Holder, No. 3:14-CV-23, 2015 WL 574800, at *3 (N.D.W. Va. February 11, 2015) (Groh, J.) (outlining Rule 12(b)(6) standard).

**Brown v. ATF**                                                              **1:22cv80**

MEMORANDUM OPINION AND ORDER

enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1) against Plaintiffs and otherwise-qualified 18-to-20-year-olds.

Pursuant to Federal Rule of Civil Procedure 54(b) and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of Plaintiffs, and to **STRIKE** this case from the Court's active docket.

It is so **ORDERED**.

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter a separate judgment order. It further **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order and the judgment order to counsel of record.

**DATED:** December 1, 2023

Tom S Kleeh
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA