IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| STEVEN BROWN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-00080 |
| ) | |
| THE BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS, AND EXPLOSIVES, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION FOR A STAY OF INJUNCTION PENDING APPEAL AND MOTION TO CLARIFY**

Defendants respectfully request that this Court enter a stay of the injunction against Defendants pending appeal, as every other court to address this issue has done. On December 1, 2023, the Court issued an opinion and order denying Defendants' motion to dismiss, granting Plaintiffs' motion for summary judgment, and enjoining Defendants from "enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1) against Plaintiffs and otherwise-qualified 18-to-20-year-olds." *See* Mem. Op. & Order ("Op.") at 40 (Dec. 1, 2023), ECF No. 40. The Court should stay this injunction until the Fourth Circuit resolves the government's appeal of this ruling. Defendants respectfully request a ruling on this motion by 5:00 p.m. on Thursday, December 7, 2023, so that Defendants may file a motion for a stay pending appeal with the Fourth Circuit in the event that this Court denies the motion. Defendants further request an immediate administrative stay of the injunction to allow this Court to consider the motion for a stay pending appeal, and, in the event that the Court denies the motion, to allow the Fourth Circuit a reasonable time to review a request for a stay pending appeal. Finally, Defendants request that the Court clarify the scope of the injunction as explained below.

1

Courts consider four factors in assessing the propriety of granting a motion to stay a judgment pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable damage absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest overlap in the balancing of harms. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). Under those standards, Defendants are entitled to a stay of the Court's injunction.

The first factor weighs in favor of a stay. Although this Court has ruled against the government on the merits, other federal courts have come to the opposite conclusion. The Fifth Circuit has determined that the challenged restrictions "seem, to us, to be firmly historically rooted," *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185, 204 (5th Cir. 2013), and a district court in that circuit recently upheld the constitutionality of the restrictions, *see Reese v. ATF*, No. 6:20-cv-1438, 2022 WL 17859138, at *2 (W.D. La. Dec. 21, 2022), *appeal filed*, No. 23-30033 (5th Cir. Jan. 13, 2023). Earlier this year, a panel of the Eleventh Circuit confirmed the constitutionality of a state law that sweeps more broadly than the federal restrictions at issue here, *see Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1332 (11th Cir. 2023), *reh'g en banc granted, opinion vacated*, 72 F.4th 1346 (11th Cir. 2023); *see also Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:22-cv-410, 2023 WL 3355339, at *9–10 (E.D. Va. May 10, 2023) (discussing court decisions addressing related issues). At a minimum, the merits present "substantial" and "novel" questions, *Fraser*, 2023 WL 3355339, at *3, as is evident from the Fourth Circuit's divided opinion in *Hirschfeld v. ATF*, 5 F.4th 407, 452 (4th Cir. 2021), *as amended* (July 15, 2021), *vacated*, 14 F.4th 322, 325 (4th Cir. 2021), addressing the same claims at issue in this case. As the district court in *Fraser* recognized, these considerations "clearly counsel[] that the exercise of equitable

2

authority calls for the granting of a stay of the injunction pending appeal." 2023 WL 5617894, at *3-4.

The government has a particularly strong likelihood of success on the merits here because the prerequisites for injunctive relief were not satisfied. Under the Federal Rules of Civil Procedure, "[e]very order granting an injunction" must "state the reasons why it issued." Fed. R. Civ. P. 65(d)(1)(A). The Supreme Court has similarly cautioned that injunctive relief is unavailable unless a court "determines that an injunction *should* issue under the traditional four-factor test," which takes into account irreparable harm, the balance of hardships, and the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157-58 (2010). In this case, Plaintiffs never demonstrated that they satisfied these factors entitling them to the injunctive relief they requested—against enforcement of the challenged statutory provisions "against Individual Plaintiffs and all similarly situated Institutional Plaintiffs' members." Am. Compl. at 22–23, ECF No. 11. They certainly never addressed these factors as they would apply to the broader relief that this Court ordered—to enjoin enforcement against all "otherwise-qualified 18-to-20-year-olds." Op. at 40. Nor did this Court address those factors in entering an injunction. It similarly did not notify the government in advance of its intention to provide broader relief than that requested by the Plaintiffs, thus prejudicing the government's ability to argue against the broad scope of relief granted. Under these circumstances, there is a strong likelihood that the Fourth Circuit will vacate the injunction. *See Wudi Indus. Co. v. Wong*, 70 F.4th 138, 192-93 (4th Cir. 2023) (holding that injunctive relief was unavailable where a court did not analyze the equitable factors).

The equities confirm that a stay is warranted. "When a statute is enjoined," the government "necessarily suffers the irreparable harm of denying the public interest in enforcement of its laws." *Planned Parenthood of Greater Tex. Surg. Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir.

2013). That principle applies with heightened force here, where the Court appears to have intended to issue an injunction that would prevent the enforcement of a federal statute that has been the law of the land for more than half a century. *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (emphasizing that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation" (quotation marks omitted)); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation omitted)). "The presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of [the government] in balancing hardships." *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). If applied as apparently intended, the injunction would irreparably harm the United States and undermine the public interest.

Moreover, the restrictions at issue are a public safety measure that Congress determined was necessary to reduce crime. In enacting the restrictions, Congress determined "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians[] . . . and others whose possession of such weapons is similarly contrary to the public interest[]" constitutes "a significant factor in the prevalence of lawlessness and violent crime in the United States." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. IV, § 901(a)(2), 82 Stat. 197, 225. More recent empirical evidence confirms that "eighteen-to-twenty-one-year-olds . . . engage in risk-taking behavior (including involvement in criminal activity) at a higher rate than older adults." Elizabeth S. Scott et al., *Young Adulthood as a Transitional Legal Category*, 85 Fordham L. Rev. 641, 645 (2016). Permitting such individuals to

obtain handguns from federal firearm licensees ("FFLs") without obtaining their parents' permission thus presents a danger to public safety.

In addition, if the Court does not issue a stay, and the individual Plaintiffs purchase their desired handguns from an FFL, it would not be possible at that point to undo the effects of the injunction. The laws at issue operate only against the FFLs, not against individuals ages 18 to 20 who are in possession of a handgun.[1] So even if the government prevails on appeal, "[i]t would be difficult, if not impossible, [for the government] to then claw-back those purchased weapons." *Fraser*, 2023 WL 5617894, at *4. "The Government furthermore would be placed in a difficult position of changing and then re-changing its guidance to FFLs," which "could hamper the Government's ability to effectively engage in law enforcement, thus jeopardizing public safety interests." *Id*. A stay would prevent those possibilities, respect a longstanding Act of Congress, and promote public safety. By contrast, any harm to other parties from a stay would be minimal. A stay would prevent Plaintiffs from purchasing handguns from FFLs only until they either reach the age of 21 or until any appeal concludes. In the interim, Plaintiffs would remain free to obtain shotguns and rifles from FFLs and to obtain handguns from those sellers via their parents. To the extent Plaintiffs seek to acquire handguns over their parents' objections, they fall within the category of individuals Congress identified as posing a threat to public safety.

For these reasons, three recent district court decisions enjoining state or federal age-based firearms regulations stayed those injunctions pending appellate review. In *Firearms Policy Coalition v. McCraw*, the court observed that the state had "a likelihood of success on the merits" given that the Second Amendment inquiry "presents many questions without fully formed

---

[1] Individuals under the age of 18 are generally prohibited from possessing handguns. 18 U.S.C. § 922(x).

answers," recognized that the other factors "all weigh heavily in favor of granting an injunction," and issued a stay sua sponte. 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022). And in *Worth v. Harrington*, the court concluded, after observing that "reasonable minds could easily disagree" as to the constitutionality of age-based firearms regulations, that a stay was appropriate. No. 21-cv-1348, slip op. at 9 (D. Minn. Apr. 24, 2023). And most recently, a court in the Eastern District of Virginia stayed its injunction against ATF on the exact same laws and claims at issue in this case, noting that "[t]he simple fact that our sister courts have split o[n] this question makes clear that reasonable minds can—and have—disagreed." *Fraser v. ATF*, No. 3:22-cv-410, 2023 WL 5617894, at *3 (E.D. Va. Aug. 30, 2023). The same approach is warranted here.

Finally, a stay is particularly warranted in this case because of the broad scope of the injunction, extending beyond the relief that Plaintiffs requested—without prior notice to Defendants, thus depriving Defendants of the opportunity to brief the issue previously. The Court's injunction is not limited to the parties or a geographic area. *See* Op. 39–40. In the context of considering nationwide injunctions, the Supreme Court has repeatedly emphasized the benefits of permitting percolation of important questions of law in multiple forums. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (highlighting that nationwide injunctions "have a detrimental effect by foreclosing adjudication by a number of different courts and judges"); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (explaining that universal injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch"); *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit."); *Arizona*

*v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting) (recognizing "that when frontier legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by this Court"); *see also CASA de Md., Inc. v. Trump*, 971 F.3d 220, 258–59 (4th Cir. 2020) ("[N]ationwide injunctions are incompatible with the well-recognized bar against litigants raising the rights of others."), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020) (mem.). There are already other cases pending in different courts, including the Fourth Circuit, addressing challenges to the same federal laws at issue in this case, *see Fraser*, No. 3:22-cv-410 (E.D. Va.) (currently on appeal before the Fourth Circuit, *see McCoy v. ATF*, No. 23-2085); *Reese*, 2022 WL 17859138, at *2 (currently on appeal before the Fifth Circuit). And the *Fraser* court only issued nationwide relief—which the court stayed—after considering and granting class certification.[2] The nationwide injunction in this case not only interferes with these pending cases and could potentially conflict with the ruling on appeal in *Fraser*, but it also prevents other districts and circuits from considering the same issues and allowing the arguments on each side to percolate prior to potential Supreme Court review.

Accordingly, Defendants have demonstrated a likelihood of success on appeal and have demonstrated that the balance of the equities favors a stay. Defendants respectfully request that the Court stay the injunction against the government until the Fourth Circuit resolves the government's appeal on the merits. In light of the equities outlined above, Defendants respectfully request a

---

[2] The government does not concede that class certification in *Fraser* was appropriate. Nevertheless, the Fourth Circuit has indicated that nationwide injunctions issued in the absence of class certification are particularly inappropriate because such injunctions conflict with Congress's prescribed procedure under Rule 23(b)(2) for an injunction protecting a group of litigants that share a common interest. *CASA de Md.*, 971 F.3d at 259.

ruling on this motion no later than 5:00 p.m. on Thursday, December 7, 2023, so that Defendants may file a motion for a stay pending appeal with the Fourth Circuit in the event that this Court denies the motion. Defendants further request an immediate administrative stay of the injunction until such time as the Court can issue a ruling on the motion for a stay pending appeal.

Finally, Defendants request that the Court clarify the scope of the injunction in several respects. First, for the reasons explained above, Defendants respectfully request that the Court clarify that the injunction applies only to sales of handguns to the named Plaintiffs in this case. Next, the Court's order enjoins Defendants from "enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1) against Plaintiffs and otherwise-qualified 18-to-20-year-olds." Op. at 40. As noted above, the statutes in question prevent FFLs from selling handguns to individuals ages 18 to 20, but do not prevent individuals in that age range from possessing handguns; thus, any ATF enforcement action would be taken against FFLs. The intention of the injunction appears to be to bar Defendants from enforcing those statutes against FFLs in a manner that would prevent FFLs from selling handguns to Plaintiffs and otherwise qualified 18-to-20-year-olds. Although Defendants object to that relief, Defendants seek clarity to understand the legal obligations imposed by the injunction. Accordingly, Defendants respectfully request that the Court clarify that the injunction prevents enforcement actions taken against FFLs for violations of 18 U.S.C. §§ 922(b)(1) and (c)(1). Defendants further request that the Court clarify that the injunction does not apply to sales of handguns to persons prohibited from possessing a firearm under 18 U.S.C. § 922(g) or any other provision of federal law or to the named plaintiffs in *McCoy v. ATF*, No. 23-2085 (4th Cir.), and *Reese v. ATF*, No. 23-30033 (5th Cir.).

A proposed order is attached hereto.

Dated: December 4, 2023

        Respectfully submitted,

        WILLIAM IHLENFELD
        UNITED STATES ATTORNEY

By:   /s/ *Maximillian F. Nogay*
       Maximillian F. Nogay
       W. Va. Bar # 13445
       United States Attorney's Office
       P.O. Box. 591
       1125 Chapline Street, Suite 3000
       Wheeling, WV 26003
       (304) 234-0100 (office)
       (304) 234-0110 (facsimile)
       Max.Nogay@usdoj.gov


        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        LESLEY FARBY
        Assistant Branch Director

        MICHAEL P. CLENDENEN
        (D.C. Bar No. 1660091)
        Trial Attorney
        DANIEL RIESS
        Senior Counsel
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street, NW
        Washington, D.C. 20005
        Tel: (202) 305-0693
        Fax: (202) 616-8460
        michael.p.clendenen@usdoj.gov

        *Attorneys for Defendants*